# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE TRAVELERS INDEMNITY COMPANY as successor in interest to GULF INSURANCE COMPANY, | : : : : | CIVIL ACTION NO.: |
| Plaintiff, | : : | |
| vs. | : : | |
| EXCALIBUR REINSURANCE CORPORATION f/k/a PMA CAPITAL INSURANCE COMPANY, | : : : | |
| Defendant. | : | AUGUST 16, 2013 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRE-PLEADING SECURITY

## I.    INTRODUCTION

The Plaintiff, The Travelers Indemnity Company as successor in interest to Gulf Insurance Company ("Travelers Indemnity"), respectfully submits this memorandum of law in support of its Motion for Pre-Pleading Security directed to Defendant, Excalibur Reinsurance Corporation f/k/a PMA Capital Insurance Company ("Excalibur").  In order "to secure the payment of any final judgment which may be rendered in the action or proceeding," Conn. Gen. Stat. § 38a-27(a) requires that an unauthorized insurer must post security (or become authorized) before filing any pleading in an action against it.  Excalibur is an unauthorized insurer and subject to the pre-pleading security requirements of Section 38a-27(a).  Accordingly, Travelers Indemnity respectfully requests that the Court issue an order requiring that Excalibur post security in the amount of $675,000.00 – or, in the alternative, to obtain a license to conduct an insurance business in Connecticut – before Excalibur may answer or move in response to Travelers Indemnity's complaint.

43986690.1

II.     **FACTUAL BACKGROUND**

Travelers Indemnity insured Grant Thornton LLP ("Grant Thornton"), an accounting firm that provided audit services and tax advice to businesses and governmental agencies.  (Affidavit of Rosemarie Robles, at ¶ 7) (hereinafter "Robles Aff.").  Grant Thornton became the subject of claims alleging improprieties in its accounting advice.  (*Id.* ¶ 8.)  Grant Thornton asked Travelers Indemnity to indemnify it for losses paid in connection with the claims referenced in the foregoing paragraph.  (*Id.* ¶ 9.)  Travelers Indemnity paid $3,000,000.00 to or on behalf of Grant Thornton, and also incurred adjustment expenses in connection with Grant Thornton's claims.  (*Id.* ¶ 10.)

Travelers Indemnity purchased a contract of reinsurance that, among other features, provided reinsurance coverage for the insurance it had issued to Grant Thornton.  (*Id.* ¶ 11.)  The contract was entitled "Accountants, Lawyers, Miscellaneous and Real Estate Errors and Omissions Liability Cessions Treaty" (the "E & O Treaty").  (*Id.*)  A true and accurate copy of the E & O Treaty is attached to the Robles Affidavit as Exhibit 1 thereto.  (*Id.*)  Excalibur was among the reinsurers who subscribed to the E & O Treaty for the period beginning April 1, 2001, accepting a 22.5% share.  (*Id.* ¶ 12.)

The E & O Treaty contained a provision known in the reinsurance industry as a "Cash Call" provision.  (*Id.* ¶ 13.)  The Cash Call provision provided, among other things, that when its reinsurers owed Travelers Indemnity more than $350,000, Travelers Indemnity could require the subscribing reinsurers to make payment within "ten working days."  (*Id.; see also* Exh. 1 to Robles Aff., at Art. 15.))

On or about July 22, 2013, Travelers Indemnity submitted (through a reinsurance broker) a reinsurance bill to Excalibur under the E & O Treaty (the "Billing"). (*Id.* ¶ 14.) A true and accurate copy of the Billing is attached to the Robles Affidavit as Exhibit 2 thereto, except that financial account numbers have been redacted pursuant to Local Rule 5(e)8. (*Id.*) The Billing arose out of the payments Travelers Indemnity made to or on behalf of Grant Thornton, and was for 22.5% of $3,000,000.00, or $675,000.00. (*Id.*) The Billing indicated that it was submitted under the E & O Treaty's Cash Call provision. (*Id.*) Excalibur has not paid the Billing. (*Id.* at 15.)

## III.   **DISCUSSION**

Under Section 38a-27(a) of the Connecticut General Statutes, before any unauthorized insurer may file a pleading in any action against it, the insurer must first deposit with the Clerk of the Court cash or securities sufficient to secure the payment of any final judgment that might be rendered in this action. Conn. Gen. Stat. § 38a-27(a). More specifically, this "Security Statute" provides:

> Before any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding . . . instituted against the person or insurer by service made in accordance with the provisions of section 38a-25, section 38a-26 or 38a-273, the person or insurer shall either: (1) Deposit with the clerk of the court in which the action or proceeding is pending . . . cash or securities . . . in an amount to be fixed by the court…sufficient to secure the payment of any final judgment which may be rendered in the action or proceeding . . . ; or (2) procure proper authorization to do an insurance business in this state.

Conn. Gen. Stat. § 38a-27(a). The Security Statute applies to contracts of reinsurance. *See* Conn. Gen. Stat. § 38a-271(c); *see also Hartford Accident & Indem. Co. v. Ace Am. Reins. Co.*, 103 Conn. App. 319, 332, 930 A.2d 701 (2007).

-3-

43986690.1

The statutory requirement of pre-pleading security is mandatory, not discretionary. *Hartford Accident & Indem. Co. v. ACE Am. Reins. Co*., 279 Conn. 220, 234 n.11, 901 A.2d 1164 (2006).  Once a plaintiff demonstrates the applicability of Conn. Gen. Stat. § 38a-27(a), then "the trial court [is] ***required*** to order that the defendants, before being permitted to defend the plaintiffs' action, either obtain proper authorization from the insurance commissioner to conduct business in this state or provide security in an amount sufficient to satisfy a judgment against them." *Id.* (emphasis added).  Unlike Connecticut's Pre-Judgment Remedy Statute, Travelers Indemnity need not demonstrate probable cause of success on the merits in order to receive the benefit of the Security Statute.  Rather, Travelers Indemnity need only demonstrate that: (1) Excalibur is not authorized to do business in Connecticut; and (2) Travelers Indemnity has instituted a claim for money damages against Excalibur.  *See Hartford Accident & Indem. Co. v. ACE Am. Reins. Co.*, 2008 Conn. Super. LEXIS 2470, *9-10 (Conn. Super. Ct. Sept. 19, 2008) (Eveleigh, J.) ("*Hartford Accident II*").  This is because "[t]he Security Statute is intended to ensure that any insurer, domestic or foreign, selling insurance or reinsurance to a person in this state will have sufficient assets in this state to satisfy any judgment." *Id.* at *4.

Section 38a-27 therefore does not permit Excalibur to challenge the merits of Travelers Indemnity's claim in an effort to avoid posting security.  For instance, in *Hartford Accident II* then-Judge (now Justice) Eveleigh held that the plaintiff was entitled to pre-pleading security because it had demonstrated:  (1) the existence of the reinsurance contracts with the defendants, (2) that it had submitted reinsurance billings to the defendant reinsurers under the reinsurance contracts, and (3) that the defendant reinsurers had failed to pay those bills.  *Id.* at *9-10.  Judge Eveleigh noted that that "due process requirements are met by the submission of some proof that contracts existed, billings were made under the auspices of those contracts, and the bills remain

-4-

unpaid." *Id.* at *10.  Unlike the Pre-Judgment Remedy Statute, the Legislature did not impose "a probable cause determination in the Security Statute." *Id.* at *5.

The Court should enter a pre-pleading security order in this action because Travelers Indemnity has demonstrated all of the things it must demonstrate to obtain such an order.  First, there is no dispute that Excalibur is not authorized to function as an insurer or reinsurer in Connecticut.  The List of Licensed Insurance Companies, Approved Reinsurers, and Surplus Lines Insurers published by the Connecticut Insurance Department does not identify Excalibur as being authorized to do business in the state, *see* http://www.ct.gov/cid/lib/cid/Licencom.pdf, and an Insurance Department bulletin confirms that Excalibur voluntarily surrendered its license.  (Robles Aff., ¶ 16 and Exh. 3 thereto.)  Second, Travelers Indemnity has proven the existence of the reinsurance contract at issue in this action.  (Robles Aff., ¶ 11 and Exhs. 1 thereto.)  Third, Travelers Indemnity has proven that it submitted reinsurance billings to Excalibur under those contracts.  (Robles Aff., ¶ 14 and Exh. 2 thereto.)  Fourth, Travelers Indemnity has proven that Excalibur has not paid the billings.  (Robles Aff., ¶ 15.)

The Court should set the amount of Excalibur's pre-pleading security requirement at $675,000.00 – the amount of the unpaid reinsurance billings.  (*Id.,* ¶ 14.)  To be sure, Travelers Indemnity is also entitled "to a calculation of pre-judgment interest as part of the security." *Hartford Accident II,* 2008 Conn. Super. LEXIS 2470, at *13.  Reserving its right to ask that those amounts be secured, Travelers Indemnity presently limits its security request to the principal balance of $675,000.00.  Excalibur is in dire financial condition; its entire policyholder surplus was only $1,276,087 on March 31, 2013, meaning that this one set of reinsurance billings account for more than half of Excalibur's entire remaining surplus.  Travelers Indemnity is therefore interested in the quickest possible resolution of this motion.  Travelers Indemnity does

not understand Excalibur to contest its calculation of the principal sum at issue, but expects that Excalibur would indeed argue over the rate and amount of pre-judgment interest. Accordingly, Travelers Indemnity presently limits its security request to the principal amount of the billings, in the hope that doing so will expedite the resolution of this motion. Travelers Indemnity respectfully reserves the right to request security for its likely award of pre-judgment interest.

Finally, the Court should order not only that Excalibur may not answer the Complaint until it posts security – the Court should order that Excalibur may not file any Rule 12 motion either. The drafters of the Security Statute were plain that they did not want unauthorized insurers to file any "pleading" before posting security, and in Connecticut state court practice, the various motions available to federal litigants under Rule 12 are "pleadings." The Connecticut state court analog to a motion under Rules 12(b)(1) or 12(b)(2), for example, is a motion to dismiss – and a motion to dismiss is a pleading. Conn. Prac. Bk. §§ 10-30, 10-6. Similarly, the Connecticut state court analog to a motion under Rule 12(b)(6) is a motion to strike – and a motion to strike is a pleading. *Id.,* §§ 10-39, 10-6. Clearly, when the Connecticut General Assembly drafted the Security Statute and required that an unlicensed insurer post security before filing any "pleading," it had the analogs to the various Rule 12 motions in mind. The Court should therefore order Excalibur to post security (or become licensed) before filing any Rule 12 motion.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Travelers Indemnity respectfully requests that the Court enter an order requiring Excalibur to post security in the amount of $675,000.00 – or, in the alternative, to secure a license to conduct an insurance or reinsurance business in Connecticut – before answering or moving in response to Travelers Indemnity's complaint.

-6-

THE TRAVELERS INDEMNITY COMPANY
as successor in interest to GULF INSURANCE
COMPANY, Plaintiff,


By: ___/s/ Mitchell R. Harris_____
    Mitchell R. Harris (ct09216)
    *mrharris@daypitney.com*
    Thomas O. Farrish (ct26917)
    *tofarrish@daypitney.com*
    Meredith A. Long (ct28567)
    *mlong@daypitney.com*
    Day Pitney LLP
    242 Trumbull Street
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    (860) 275-0343 (fax)
    Its Attorneys

43986690.1